UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK A. HOLLAND,

              Plaintiff,        Civil Action No. 13-10295
                                      Honorable Mark A. Goldsmith
                                      Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 12]**

Plaintiff Derrick A. Holland ("Holland") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [11, 12], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Holland is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Holland's Motion for Summary Judgment [11] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II.     REPORT**

    **A.     Procedural History**

On November 3, 2010, Holland filed an application for DIB, alleging a disability onset date of May 6, 2009. (Tr. 77-83). This application was denied initially on January 11, 2011. (Tr. 49-52). Holland filed a timely request for an administrative hearing, which was held on October 5, 2011, before ALJ Melvyn Kalt. (Tr. 21-47). Holland, who was represented by attorney William White, testified at the hearing, as did vocational expert Pauline Pegram. (*Id.*). On October 13, 2011, the ALJ issued a written decision finding that Holland is not disabled. (Tr. 12-18). On December 12, 2012, the Appeals Council denied review. (Tr. 1-5). Holland filed for judicial review of the final decision on January 23, 2013. (Doc. #1).

    **B.     Background**

        *1.     Disability Reports*

In a November 3, 2010 disability field office report, Holland reported that his alleged onset date was May 6, 2009. (Tr. 92). The claims examiner noted that, during a face-to-face interview, Holland had difficulty sitting, standing, and walking. (Tr. 93). Specifically, it was noted that Holland "sat briefly then rose periodically throughout the interview stretching and bending his back," "arose with difficulty," and "walked with a modest limp." (*Id.*).

In an undated disability report, Holland indicated that his ability to work is limited by disc problems affecting his legs. (Tr. 96). He stopped working on May 6, 2009, because of his condition and has not worked since that time. (*Id.*). Holland completed high school but had no further education or training. (Tr. 96-97). Prior to stopping work, he worked as a hi-lo driver/machine operator (from 1995-2009) and in shipping and receiving (from 2001-2003). (Tr. 97). Holland reported that he had an MRI/CT scan of his back in August of 2003. (Tr. 99). At the time of the report, he was taking only ibuprofen (for pain). (Tr. 98).

2

In a function report dated December 6, 2010, Holland reported that he lives in an apartment with his wife. (Tr. 109). He indicated that he can no longer do his past work because he cannot sit, stand, or walk for long periods of time "without major pain and discomfort." (*Id.*). When asked to describe his daily activities, Holland indicated that his wife prepares breakfast for him before she leaves for work; after she leaves, he watches television (sitting up) for about thirty minutes and then goes back to bed. (Tr. 110). When asked to describe what he could do before the onset of his condition that he can no longer do, Holland listed several physical activities, including playing basketball, skating, bowling, running, and doing yard work. (*Id.*). His condition affects his sleep because he sometimes has difficulty getting comfortable. (*Id.*). He prepares sandwiches and "quick meals" on a daily basis and is able to wash dishes and vacuum. (Tr. 110-11). He does not do yard work because it is too hard on his legs and back (and because he does not have a yard). (Tr. 112). He goes grocery shopping once a week with his wife and is able to drive a car short distances. (*Id.*). His hobbies include watching television, playing video games, and reading. (Tr. 113).

When asked to identify functions impacted by his condition, Holland checked lifting, bending, standing, walking, sitting, kneeling, stair climbing, and concentration. (Tr. 114). He indicated that he can lift 10-25 pounds, stand for thirty minutes, and walk about 75 yards before he has to rest. (*Id.*). Holland indicated that he uses a cane if he is "walking constantly," but this cane was not prescribed by a doctor. (*Id.*).

  2. *Plaintiff's Testimony*

At the October 5, 2011 hearing before the ALJ, Holland testified that he has had problems with his back, hips, and legs since 2003, but he continued to work in various positions until he became disabled on May 6, 2009. (Tr. 24, 27). Prior to stopping work, Holland worked

3

for several temporary agencies, primarily in shipping and receiving and as a hi-lo driver. (Tr. 26). He testified that he was fired from his last job (as a hi-lo driver) after taking too long of a "breather" to rest and stretch his back, hip, and leg. (Tr. 26-27, 35). In October of 2009, Holland attempted to return to work at a printing shop (packing and labeling boxes), but he was sent home after a couple of hours because he was not working fast enough. (Tr. 24-25).

He further testified that he uses a cane if he has to walk "any great distance," because walking causes his right hip to stiffen up. (Tr. 28). He used to spend time playing video games or playing cards, but it is now difficult for him to sit for more than twenty minutes at a time. (Tr. 30-31). In addition, he can no longer ride a bike. (Tr. 31). Holland testified that he cooks "most every day," washes dishes, and takes out the trash (depending on how heavy it is). (Tr. 31-32). He is able to drive short distances and go shopping with his wife. (Tr. 35).[1] However, he claims that, some days he does not even get out of bed. (Tr. 38).

Holland testified that he tried pain patches, but he could not "tell any difference." (Tr. 33). His treating physician told him that "he can't really do anything for [him] short of getting an operation." (*Id.*). Holland testified that he has been looking for work and received a few calls from prospective employers, but that nothing has materialized. (Tr. 36).

       3.     *Medical Evidence*

          a.     *Treating Sources*

Holland underwent a lumbar spine MRI in April of 2003, approximately six years prior to his alleged onset date. (Tr. 133). The MRI revealed a soft disc extrusion at L5-S1, compressing the S1 nerve root sleeves and flattening the ventral thecal sac. (*Id.*). The disc herniation did not result in high-grade central canal stenosis. (*Id.*). At the same level, there was moderate right-sided foraminal impingement and less conspicuous left-sided foraminal impingement. (*Id.*). The

---

[1] Holland testified that he does not have a handicap sticker for any of his vehicles. (Tr. 35).

4

MRI also showed minor disc bulging at L4-L5. (*Id.*).

On April 20, 2011, Holland saw Dr. Stephen Swetech, complaining of back pain. (Tr. 148). Although Dr. Swetech's handwritten treatment note is largely illegible, it appears that he diagnosed conditions including right lower extremity radiculopathy, right lumbar myositis, and an antalgic gait. (Tr. 151). In addition, it appears that Dr. Swetech recommended an MRI, physical therapy, and an EMG study. (Tr. 148).

Holland had another lumbar spine MRI on June 29, 2011. (Tr. 143). It revealed decreased disc height and hydration at L5-S1 with a diffuse disc bulge and central disc protrusion. (*Id.*). The neural foramina were narrowed bilaterally, but there was no central canal stenosis. (*Id.*). In addition, Holland underwent an EMG study in July of 2011, which yielded normal results, with no evidence of radiculopathy or neuropathy in either leg. (Tr. 159).

Holland returned to see Dr. Swetech for a re-check of his back on September 21, 2011, this time also complaining of left knee swelling. (Tr. 155). Again, Dr. Swetech's handwritten treatment note is largely illegible; however, it appears that he found left knee swelling and a positive straight leg raising test. (*Id.*).

                        b.      *Consultative Sources*

On December 23, 2010, Holland underwent a consultative physical examination with Dr. Atul Shah. (Tr. 135-42). Holland presented for this examination with a cane, and he complained of worsening back pain, including spasms and stiffness, radiating to his right knee, with some cramps and numbness. (Tr. 135). He indicated that his back pain is worse with bending, twisting, climbing ladders, and lifting more than 10-15 pounds. (*Id.*). He is unable to walk more than 100 yards, stand for more than one hour, or sit for more than 30-40 minutes at a time. (*Id.*). Holland reported using a cane for daily chores and activities and stated that he had a "limping

5

gait" on and off because of lower back pain. (*Id.*). On examination, Holland could raise both arms without any problems; had moderate restriction of range of motion in the lumbar spine; and displayed a slow gait with limping on the right. (Tr. 136). He had normal sensation to touch and full strength, but decreased deep tendon reflexes on the right. (*Id.*).

Dr. Shah diagnosed chronic lumbar radiculopathy on the right side with disc disease. (Tr. 137). He indicated that Holland "has moderate functional impairment of occupational activity because of lower back pain with moderate limitations of prolonged walking, standing, climbing stairs and ladders." (*Id.*). Specifically, Dr. Shah noted that because of Holland's "moderate pain" in his lower back, he is unable to bend, stoop, carry, push, pull, tie his shoes, pick up a coin, pick up a pencil, squat and arise from squatting, and climb stairs. (Tr. 140).[2] He further indicated that Holland cannot walk on his heels and toes, has an unpredictable gait, and needs to use a cane to reduce pain and to prevent falls. (Tr. 141).

### 4. *Vocational Expert's Testimony*

Pauline Pegram testified as an independent vocational expert ("VE"). (Tr. 38-46). The VE characterized Holland's past work as a hi-lo driver as semi-skilled in nature and medium in exertion (although he performed it at the heavy level). (Tr. 39). Similarly, she characterized Holland's past jobs in shipping and receiving and as a production grinder as semi-skilled medium work. (*Id.*). The VE characterized other jobs performed by Holland during the relevant time period as primarily unskilled medium work. (*Id.*). According to the VE, Holland acquired skills through his past work as a hi-lo driver that would transfer to the light level. (Tr. 40).

The ALJ asked the VE to imagine a claimant of Holland's age, education, and work

---

[2] On the very same page, however, Dr. Shah indicated that Holland could sit, stand, button clothes, dress and undress, dial a telephone, open a door, make a fist, write, and get on and off the examination table. (*Id.*).

6

experience, who could perform light, unskilled work, so long as he had the opportunity to alternate between sitting and standing. (*Id.*). The VE testified that the hypothetical individual would be capable of working in hand packaging, hand assembling, and visual inspecting/sorting positions (approximately 20,000 jobs in total in the state of Michigan). (Tr. 41). The ALJ then added a limitation that the hypothetical individual could lift no more than 10 pounds, and the VE testified that there would be about 10,000 sedentary manufacturing jobs in Michigan that the individual could perform. (*Id.*). The VE testified that such a person could also work as a lobby attendant, information clerk, or surveillance system monitor (with 10,000 such positions available in the state). (Tr. 41-42).

Holland's attorney asked the VE whether her testimony would change if the hypothetical individual could not bend, stoop, carry, push, pull, pick up coins or pencils, squat, rise from a squatting position, or climb stairs. (Tr. 44). The VE testified that both the light and sedentary manufacturing positions would be eliminated because they require the ability to perform tasks akin to picking up coins or using a pencil[3], and the service jobs would be eliminated because they require the ability to write a note, use a computer mouse, and pick up a telephone receiver. (Tr. 44-45). Holland's attorney then asked what effect it would have if the hypothetical individual needed to use a cane, both to reduce pain and to prevent himself from falling. (Tr. 45). The VE testified that the assembly and packaging jobs would then be eliminated, but a reduced number of visual inspecting/sorting jobs could still be performed (6,000 such jobs in the state). (Tr. 46).

### C. Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v.*

---

[3] As noted in footnote 2, *supra*, despite finding that Holland could not pick up a pencil, Shah found that Holland could write.

*Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D.    The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Holland is not disabled under the Act. At Step One, the ALJ found that Holland has not engaged in substantial gainful activity since May 6, 2009, his alleged onset date. (Tr. 14). At Step Two, the ALJ found that Holland has the severe impairments of right lumbar myositis and multilevel degenerative changes of the lumbar spine. (*Id.*). At Step Three, the ALJ found that Holland's impairments do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Holland's residual functional capacity ("RFC"), concluding that he is capable of performing sedentary work, except that he must be able to alternate between sitting and standing as needed; he is limited in bending, stooping, and twisting; and he is limited to unskilled tasks. (Tr. 15-16).

At Step Four, the ALJ determined that Holland is unable to perform his past relevant work. (Tr. 16-17). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Holland is capable of performing a significant number of jobs that exist in the national economy. (Tr. 17). As a result, the ALJ concluded that Holland is not disabled under the Act. (Tr. 18).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not

9

remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

In his motion for summary judgment, Holland argues that the ALJ erred in concluding that he has the RFC to perform a reduced range of sedentary work. (Doc. #11 at 10-14). Specifically, Holland asserts that the ALJ "failed to state adequate reasons to discount the opinion of Dr. Shah," the consultative examiner, that Holland needs to use a cane and is limited in his ability to pick up a coin or pencil. (*Id.* at 14). According to Holland, had the ALJ given the "proper weight" to Dr. Shah's opinion in these respects, he would have concluded – based on the VE's testimony – that Holland is disabled.

As set forth in greater detail above, Holland underwent a consultative physical examination with Dr. Atul Shah on December 23, 2010. (Tr. 135-42). On examination, Holland could raise both arms without any problems; had only "moderate" restriction of range of motion in the lumbar spine; and displayed a slow gait with limping on the right. (Tr. 136). He had normal sensation to touch and full strength, but decreased deep tendon reflexes on the right. (*Id.*). Shah found that Holland had only "moderate functional impairment of occupational activity because of lower back pain with moderate limitations of prolonged walking, standing, climbing stairs and ladders." (Tr. 137). After conducting this physical examination, Dr. Shah checked boxes on a form entitled "Neurologic and Orthopedic Supplemental Report," indicating that because of Holland's "moderate pain" in his lower back, he is unable to bend, stoop, carry, push, pull, tie his shoes, pick up a coin, pick up a pencil, squat and arise from squatting, and climb stairs. (Tr. 140). He also checked a box indicating that Holland needs to use a cane to reduce pain and to prevent falls. (Tr. 141).

In evaluating an opinion from a non-treating medical source, such as Dr. Shah, the ALJ must consider several factors, including the supportability and consistency of the opinion, the specialization of the medical source, and any other factors raised by the claimant (or others). *See*

11

20 C.F.R. §404.1527(c)(3)-(6). Holland specifically criticizes the ALJ for rejecting Dr. Shah's finding that he needs to use a cane, as well as Dr. Shah's finding that he cannot pick up a coin or pencil, arguing that these limitations are work preclusive according to the VE. (Doc. #11 at 11-16). After a thorough review of the ALJ's decision, as well as the record evidence, it is apparent that, while the ALJ's decision might not be as clear as desired, he adequately addressed the types of functional limitations at issue in this case and reasonably concluded that Holland is not disabled under the Act.

As an initial matter, the ALJ implicitly rejected Dr. Shah's finding that Holland needs to use a cane to reduce pain and to prevent falls (Tr. 141), saying that "there is no objective medical evidence corroborating the need for use of a cane." (Tr. 16). In support of this conclusion, the ALJ noted that Holland exhibited good strength in all extremities, intact sensation, and no evidence of weakness. (Tr. 16, 136). In addition, the ALJ noted that there is no medical evidence of radiculopathy or neuropathy in Holland's lower extremities (indeed, the September 2011 EMG results specifically found no evidence of either condition). (Tr. 16, 159 ("EMG study in the legs and paraspinal muscles shows no denervation. Motor and sensory NCS are normal. H-reflex study is normal. Impression: Normal study. No electrical evidence of radiculopathy or neuropathy in either leg.")). Thus, while the ALJ did not specifically address Dr. Shah's opinion that Holland needs to use a cane, he did implicitly reject this finding and he provided good reasons doing so, which is sufficient. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (ALJ did not err in failing to explain the weight given to treating physicians' opinions where he evaluated the claimant's impairments and, in doing so, indirectly attacked both the supportability of those opinions and their consistency with the record evidence).[4]

---

[4] The Court also notes that after testifying that he drove short distances to go shopping, Holland

Holland argues that the objective medical evidence *does* support Dr. Shah's finding that he needs to use a cane. (Doc. #11 at 11-12). Specifically, Holland criticizes the ALJ's finding that the 2003 and 2011 MRIs demonstrated improvement in his condition. (*Id.* at 12 (citing Tr. 15)). According to Holland, these MRI results "were essentially identical and did not demonstrate improvement." (Doc. #11 at 12). Holland is incorrect: as the ALJ found, his 2003 MRI showed a herniated disc at L5-S1; however, his 2011 MRI revealed only a bulging disc and protrusion at L5-S1 and no central stenosis. (Tr. 14-15, 133, 143). Thus, the ALJ reasonably concluded that these MRIs demonstrated at least some improvement in Holland's condition and, as a result, undercut the credibility of his allegations. *See* 20 C.F.R. §404.1529(a).

Moreover, even if the ALJ erred in rejecting Dr. Shah's finding that Holland needs to use a cane to reduce pain and prevent falls, any such error is harmless. The VE testified, upon questioning by Holland's attorney, that even if Holland needed to use a cane, he still would be able to perform some visual inspecting/sorting jobs (approximately 6,000 in the state of Michigan). (Tr. 46). This is a significant number of jobs and provides substantial evidence supporting the ALJ's finding that Holland is not disabled. *See Andree v. Comm'r of Soc. Sec.*, 2012 WL 1094662, at *3 (W.D. Mich. Mar. 13, 2012) (5,500 jobs is a significant number); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 jobs is a significant number); *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (fewer than 1,000 jobs can be a significant number).

Holland also argues that the ALJ erred in failing to directly address Dr. Shah's finding that he is limited in his ability to pick up coins and pencils. (Doc. #11 at 11-16). To be sure, Dr. Shah did check boxes on a form indicating that, because of Holland's "moderate pain" in his

---

answered in the negative when the ALJ asked whether he had a handicap permit for any of his vehicles. (Tr. 35).

13

lower back, he is unable to pick up a coin or pencil. (Tr. 140). And, Holland is correct both that the ALJ did not specifically discuss these findings, and that the VE testified that such limitations would eliminate Holland's ability to perform both sedentary manufacturing and clerical jobs. However, in this regard Holland has identified – at most – harmless error.

Although the ALJ did not explicitly discuss Dr. Shah's findings in this respect, he did reasonably conclude that there are "no limitations regarding the claimant's upper extremities" (Tr. 16) – a finding that is supported by substantial evidence. There simply is no evidence in the record suggesting that Holland experiences any significant upper extremity deficiencies or has any problems with fine manipulation. In his motion, Holland does not point to any evidence supporting such findings; and, indeed, in both his testimony and in written disability reports, Holland consistently mentioned only problems with his back, hips, and legs.[5] (Tr. 26-27, 109-15). Moreover, in Holland's visits to his treating physician, Dr. Swetech, he never reported any difficulties with his upper extremities, complaining only of back and left knee pain. (Tr. 148, 155). Finally, the ALJ properly noted that in Dr. Shah's report, he found only "moderate limitation of motion of the lumbar spine…5/5 strength throughout all the extremities, and intact sensation…[and only] moderate limitations regarding prolonged walking, standing…" (Tr. 16, 137). Tellingly, Dr. Shah concluded in the referenced report that Holland had only "moderate functional impairment of occupational activity…" (Tr. 137).

Thus, the ALJ properly found that Holland is not limited in the use of his upper

---

[5] To the extent Holland now argues that he is disabled as a result of alleged upper extremity limitations, such a claim is waived. *See Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996) (claimant who fails to list alleged disabling condition in application for benefits, or testify to condition at administrative hearing, waives ability to raise issue on appeal, regardless of whether evidence exists in the record to support claim).

extremities,[6] and his conclusion that Holland can perform a reduced range of sedentary work is supported by the substantial evidence discussed herein.

### III.  CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Holland's Motion for Summary Judgment [11] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: August 26, 2013  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

### NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v.*

---

[6] Indeed, when reviewing the "Neurologic and Orthopedic Supplemental Report" completed by Dr. Shah in its totality, it seems clear that Dr. Shah was not opining that Holland cannot pick up a coin or a pencil because he is limited in fine manipulation, but rather because he is limited in the ability to bend over. (Tr. 140). While Dr. Shah opined that Holland cannot bend, stoop, or tie his shoes (all of which involve bending over); as noted above, fn. 2, he also opined that Holland has no difficulty buttoning clothes, dialing a telephone, and writing (all of which involve fine manipulation, but not bending over). (*Id.*). Thus, a reasonable interpretation of Dr. Shah's report is that he found Holland would have trouble *bending over* to pick up a coin or *bending over* to pick up a pencil, but would not be limited in his ability to pick these items up off of a table or use them. Other record evidence is consistent with this interpretation. For instance, Holland testified that he plays online video games (for about 20 minutes at a time), "cook[s] most every day," takes the garbage out (at least when it is not too heavy), washes dishes, and drives a car. (Tr. 30-32, 35). This interpretation is also consistent with Dr. Shah's conclusion that Holland suffered only "moderate functional impairment of occupational activity…" (Tr. 137).

*Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 26, 2013.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager