UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK A. HOLLAND,

       Plaintiff,

v.                                     Case No. 4:13-cv-10295
                                     HON. MARK A. GOLDSMITH
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____/

**OPINION AND ORDER ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DATED AUGUST 26, 2013 (DKT. 13), OVERRULING PLAINTIFF'S OBJECTION (DKT. 14), DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 11), AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 12)**

## I.    INTRODUCTION

This is a social security case. Plaintiff Derrick A. Holland appeals from the final determination of the Commissioner of Social Security that he is not disabled and therefore not entitled to disability insurance benefits. The Court entered an order referring the matter to Magistrate Judge David R. Grand (Dkt. 3). The parties have filed cross motions for summary judgment (Dkts. 11, 12). Magistrate Judge Grand issued a report and recommendation ("R&R"), recommending that the Court grant Defendant's motion, deny Plaintiff's motion, and affirm the denial of benefits (Dkt. 13). Plaintiff filed objections to the R&R (Dkt. 14). For the reasons that follow, the Court accepts the Magistrate Judge's recommendations, grants Defendant's motion for summary judgment, denies Plaintiff's motion for summary judgment, and affirms the denial of benefits.

## II.     BACKGROUND

The facts and legal standards for this matter are set forth in detail in the Magistrate Judge's R&R. The parties do not challenge that background information; rather, Plaintiff challenges the conclusions arising out of those facts and standards with respect to his use of a cane. Accordingly, the Court briefly summarizes the history of this matter, with a particular emphasis on the use of the cane.

Plaintiff initially requested disability insurance benefits on November 3, 2010. Administrative Record ("A.R.") at 77-83 (Dkt. 8). Plaintiff claimed that his disabling onset date was May 6, 2009. Id. at 77. In later reports, Plaintiff explained that he had been working as a "Hi-lo driver/Machine operator," but that he had to stop working in May 2009 because of his conditions. Id. at 96-97, 102-103.

A representative from the Social Security Administration completed a field report in November 2010. Id. at 92-94. After conducting a face-to-face interview, the representative noted that Plaintiff had difficulty sitting, standing, and walking; that he "rose periodically [throughout] the interview stretching and bending his back"; and that when Plaintiff "arose with difficulty he walked with a modest limp." Id. at 92-93.

Plaintiff also provided limited medical evidence in support of his application. An April 2003 MRI revealed a soft disc extrusion at L5-S1, which compressed the S1 nerve root sleeves and flattened the ventral thecal sac. Id. at 133. This did not result in high-grade central canal stenosis. Id. The report also noted that "[a]t this same level, there is moderate right-sided foraminal impingement and less conspicuous left-sided foraminal impingement." Id. In addition, the report identified that there was minor disc bulging at L4-L5. Id.

On December 23, 2010, Plaintiff underwent a consultative examination with Dr. Atul Shah.  Id. at 135-142.  Dr. Shah noted that Plaintiff "walked with a cane" and that Plaintiff reported "using a cane for his daily chores and daily activities since the last two years."  Id. at 135.  Dr. Shah concluded that Plaintiff "has moderate functional impairment of occupational activity because of lower back pain with moderate limitations of prolonged walking, standing, climbing stairs and ladders."  Id. at 137.  Dr. Shah also noted that Plaintiff "has moderate restriction of range of motion of the lumbar spine," that Plaintiff's "gait is slow with limping on the right," that the "[d]eep tendon reflexes are decreased on the right," and that "[p]ower is 5/5 overall."  Id. at 136.[1]  Toward the end of the report, Dr. Shah checked two boxes indicating that Plaintiff used a walking aid to (1) "Reduce Pain" and (2) because it was "Needed; Would Fall Without Aid; Clinically Req'd."  Id. at 141.  Next to these boxes, Dr. Shah wrote a message that appears to be "Cane x 2-3."  He also wrote the designation "PRN," which is shorthand for "pro re nata" or "as needed."[2]  Id.  The report also emphasized that Plaintiff's cane was "non-prescribed."  Id. at 142 (emphasis in original).  The remainder of Dr. Shah's handwritten notes is indecipherable.

Plaintiff then saw Dr. Stephen Swetech on April 20, 2011, where he complained of back pain.  Id. at 148.  Most of Dr. Swetech's handwritten notes are illegible, but it appears that he suggested conditions including right-lower-extremity radiculopathy, right lumbar myositis, and

---

[1] Dr. Shah recorded that Plaintiff's range of motion for the lumbar spine was limited at "70+" for flexion (normally 0°-90°) and "10+" for extension, right lateral flexion, and left lateral flexion (normally 0°-25°).  A.R. at 138.

[2] See Holt v. Comm'r of Soc. Sec., No. 12-218, 2013 WL 2434432, at *4 n.7 (S.D. Ohio June 5, 2013) (noting that "'prn' stands for the Latin phrase, pro re nata, meaning 'as the occasion arises; when necessary'" (citing Stedman's Medical Dictionary 776, 1562 (28th ed. 2006))); see also Dorland's Illustrated Medical Dictionary 1520 (30th ed. 2003) (defining "PRN" as "according to circumstances").

an antalgic gait. Id. at 151. Dr. Swetech referred Plaintiff for a MRI, physical therapy, and an EMG and nerve conduction study with respect to the expected lower-extremity radiculopathy. Id. at 143, 148, 152-153.

In June 2011, Plaintiff underwent the lumbar spine MRI. Id. at 143. The MRI revealed "[d]ecreased disc height and hydration with diffuse disc bulge" and central disc protrusion at L5/S1. Id. The report also noted that "[t]he neural foramina are narrowed bilaterally," and that there was "[n]o central stenosis." Id. The July 2011 EMG of Plaintiff's legs and paraspinal muscles showed "no denervation. . . . No electrical evidence of radiculopathy or neuropathy in either leg." Id. at 159.

The Social Security Administration denied Plaintiff's request for benefits on January 11, 2011, finding that Plaintiff could perform work less demanding than his previous jobs. Id. at 49-52. Plaintiff subsequently requested a hearing, which was held on October 5, 2011, with ALJ Melvyn B. Kalt presiding. See id. at 25-47, 53. Both Plaintiff and the vocational expert, Pauline Pegram, testified at the hearing. Plaintiff was represented by counsel. See id. at 25-26.

Plaintiff testified extensively about his pain and the activities that he can and cannot perform as a result. As relevant to the instant decision, the following inquiry occurred between Plaintiff and the ALJ:

> Q: Now, you have a cane with you today?
>
> A: Yeah.
>
> Q: Why do you use the cane?
>
> A: Well, if I have to walk any great distance. Like, this I didn't think was too bad until I got that incline.
>
> Q: You mean here at the court?
>
> A: Yeah, coming in.

4

> Q: From the parking lot?
>
> A: Yeah.
>
> Q: What happened?
>
> A: It's just like a little hill or something out there. Anyway, any walking I have to do for a great deal of time and then talking about not even but maybe a few hundred yards back. It just stiffens up.
>
> Q: You're pointing to your right hip?
>
> A: Yeah. It starts right here in. And I don't know if it's really my leg or is it just really my hip, but it kind of gives me paralysis down here.

Id. at 28. Plaintiff also stated that he drives short distances, but does not have a handicap permit for his car. Id. at 35.

The vocational expert then testified regarding possible employment available to an individual in Plaintiff's position. The vocational expert noted that, if Plaintiff's testimony was fully credited, he would not be able to return to any past jobs nor perform any other work. Id. at 40. She also explained that if the ALJ was to find that Plaintiff could perform light or sedentary work, but that the work had to be unskilled and that Plaintiff would need to alternate between sitting and standing, Plaintiff could not return to his past work, but that there were other jobs Plaintiff could perform. Id. at 40-41. The vocational expert testified that, with the unskilled and sit/stand restrictions, the number of available jobs would be 10,000 in Michigan — with 5,000 in southeast Michigan — if Plaintiff was limited to lifting 10 pounds (sedentary work), and 20,000 jobs in Michigan — with 10,000 in southeast Michigan — if Plaintiff was limited to lifting 20 pounds (light work). Id. at 40-42.

5

Plaintiff's counsel then questioned the vocational expert. He asked whether the use of a cane to prevent falling and to reduce pain would affect the jobs mentioned by the vocational expert. Id. at 45. The vocational expert responded:

> Well, certainly the light occupations where you can sit or stand or the sedentary occupations where you can sit or stand if in fact you need the cane when you're exercising the standing option. It's going to completely obliterate the light occupations because it's my experience in an eight hour day that persons have a difficult time wielding up to 20 pounds one-handed while they're holding onto a cane. With the sedentary occupations, if we just look at that situation, now we're talking about possibly some visual inspection and sorting jobs. I would preclude assembly and package because they require bilateral use of the hands. And inspecting and sorting, you can pick up a much lighter item with one hand and do that task. So that would reduce them to 6,000 of those types of jobs in the state and one-half in the southeast Michigan area.

Id. at 46. Plaintiff's counsel asked no further questions. Id.

The ALJ issued his decision on October 13, 2011. Id. at 9-20. Using the steps outlined by the social security regulations, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 6, 2009. Id. at 14. The ALJ also found that Plaintiff has severe impairments — right lumbar myositis and multilevel degenerative changes of the lumbar spine — but that he does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Id. at 14-15.

Next, after reviewing the medical records and testimony, the ALJ concluded that Plaintiff "has the residual capacity to perform sedentary work . . . except that he must be able to alternate between sitting and standing as needed; he is limited in bending/stooping/twisting; and is further limited to unskilled tasks." Id. at 15. The ALJ noted that Plaintiff testified

> that he is unable to work due to chronic low back pain, right hip pain, and right leg pain. [Plaintiff] testified that prolonged

6

> walking, standing, or sitting causes stiffness in his low back, right hip, and right leg. He also testified to recent swelling in the left knee. He testified that he is able to drive short distances.

Id. Nevertheless, the ALJ found that Plaintiff's "medically determinable impairments might be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent they are inconsistent with the" ALJ's residual functional capacity assessment. Id. The ALJ emphasized this credibility determination again later in the analysis:

> The objective medical evidence does not fully corroborate the claimant's testimony regarding the extent of his limitations. The MRI findings of the lumbar spine indicate improvement from 2003 to 2011. Additionally, in September 2011, the electromyographic and nerve conduction studies of the lower extremities were normal. The claimant consistently exhibits 5/5 strength throughout all the extremities and no muscle atrophy, typically associated with severe and disabling pain. Moreover, the claimant takes only over the counter pain medication, which undercuts allegations of disabling pain.

Id. at 16.

Lastly, as particularly relevant to the instant decision, the ALJ found that

> [a]lthough the claimant used a cane at the consultative evaluation, in December 2010, there is no objective medical evidence corroborating the need for use of a cane. The claimant exhibits good strength in all the extremities and intact sensation and there is no evidence of weakness, radiculopathy, or neuropathy in the lower extremities.

Id.

Applying his residual functional capacity assessment, the ALJ found that Plaintiff was unable to perform any of his past work. Nevertheless, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. at 17.

7

The ALJ noted that the vocational expert testified that "given all of [the relevant] factors [an] individual would be able to perform the requirements of representative occupations such as lobby attendant, information clerk, and surveillance systems monitor, of which there are 5,000 such jobs in southeastern Michigan." Id. Accordingly, the ALJ found Plaintiff to be not disabled, and denied benefits. Id. at 17-18.

On November 16, 2011, Plaintiff, through counsel, requested review of the ALJ's decision. Id. at 7-8. As relevant to the instant action, Plaintiff challenged the ALJ's decision because the ALJ did not expressly mention Dr. Shah's conclusion that Plaintiff's "use of a cane was medically necessary not only to reduce pain, but to keep from falling." Id. at 8. The Appeals Council denied Plaintiff's request in December 2012. Id. at 1-4.

On January 23, 2013, Plaintiff filed the instant action in this Court. Compl. (Dkt. 1) The Court referred the matter to Magistrate Judge David R. Grand (Dkt. 3). The parties filed cross-motions for summary judgment (Dkts. 11, 12), and Magistrate Judge Grand issued an R&R recommending that the Court grant Defendant's motion and deny Plaintiff's motion (Dkt. 13). Plaintiff filed objections (Dkt. 14) and Defendant did not respond.

### III. DISCUSSION

Plaintiff's main objection is to one finding in the R&R: that the ALJ "did not err in rejecting the consultative examiner's statement and opinion that Plaintiff required the use of a cane." Pl. Obj. at 1. Plaintiff argues that by rejecting Dr. Shah's conclusion that Plaintiff needed a cane to stand, the ALJ substituted "his own 'medical expertise' in place of the trained medical professionals [sic]." Id. at 4.

The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because the Court finds no merit

in Plaintiff's argument, and because there is no clear error in the Magistrate Judge's conclusion that any error would have been harmless regardless, the Court overrules Plaintiff's objection.

### A. The ALJ Did Not Err in Rejecting Dr. Shah's Conclusion.

Plaintiff's primary argument is that the ALJ erred in finding that Plaintiff does not require the use of a cane to avoid falling and to reduce pain. Pl. Obj. at 2-4. Plaintiff asserts that, in finding that no cane is necessary, the ALJ substituted his own judgment for that of a medical professional, i.e., Dr. Shah. Plaintiff also claims that objective medical evidence supports the use of a cane; according to Plaintiff, the April 2003 and June 2011 MRIs suggest that a cane may be necessary because they show foraminal impingement and narrowed neural foramina, respectively. Id. at 3-4.

The Magistrate Judge recommended that Plaintiff's use of a cane did not warrant reversal or remand because the ALJ "implicitly rejected Dr. Shah's finding that [Plaintiff] needs to use a cane to reduce pain and to prevent falls." R&R at 12. According to the Magistrate Judge, this rejection is shown by the ALJ's findings that (1) there was no objective medical evidence corroborating the need for a cane and (2) the medical evidence suggested the opposite, i.e., that Plaintiff "exhibited good strength in all extremities, intact sensation, and no evidence of weakness[,] . . . radiculopathy or neuropathy in [the] lower extremities." Id. The Magistrate Judge thus concluded that "while the ALJ did not specifically address Dr. Shah's opinion that [Plaintiff] needs to use a cane, he did implicitly reject this finding and he provided good reasons for doing so." Id. The Court agrees, and finds that Plaintiff overstates the evidence regarding his need for the cane and improperly characterizes the ALJ's interpretation of that evidence.

The Social Security Administration has promulgated regulations dictating what factors an ALJ must consider when weighing medical opinion evidence. See 20 C.F.R. §§ 404.1527(a)(2),

9

(b), (c). For a non-treating physician, such as Dr. Shah, there are a variety of factors an ALJ considers in determining how much weight to attribute to a specific medical opinion, including: whether the physician actually examined the claimant; the degree of supporting explanation, evidence, and laboratory results provided by the physician to support that opinion; whether the opinion is consistent with the record as a whole; any specialization by the physician; and "other factors" that are raised. 20 C.F.R. § 404.1527(c)(1), (3)-(6).

Here, the ALJ concluded, as follows:

> Although the claimant used a cane at the consultative evaluation, in December 2010, there is no objective medical evidence corroborating the need for use of a cane. The claimant exhibits good strength in all the extremities and intact sensation and there is no evidence of weakness, radiculopathy, or neuropathy in the lower extremities.

A.R. at 16. In reaching this decision, the ALJ impliedly recognized Dr. Shah's suggestion — put forward via a checked box — that Plaintiff use a cane, but found that no other objective medical evidence corroborated the need for this device. On the other hand, the ALJ found that objective medical evidence in the record showed that Plaintiff "exhibits good strength in all the extremities" and that there is "no evidence of weakness, radiculopathy, or neuropathy in the lower extremities," thereby undermining Dr. Shah's opinion. Id. This finding is supported by medical records discussed in the ALJ's decision, including Dr. Shah's conclusion that Plaintiff's "[p]ower is 5/5 overall," and the subsequent 2011 EMG revealing "[n]o electrical evidence of radiculopathy or neuropathy in either leg." Id. at 136, 159.

The Court also notes that the weight Plaintiff tries to attribute to his use of the cane is misplaced. Although Plaintiff never states so expressly, Plaintiff's argument appears to rely on a belief that his use of the cane necessitates a finding of disability because he would fall without

10

it.[3]  See A.R. at 45 (suggesting that Plaintiff is "required to use a cane because he would fall without it").  But the record undermines Plaintiff's apparent contention that he requires regular use of this device.  As Plaintiff notes, Dr. Shah did check a box with set language next to it indicating that the cane was "Needed; Would Fall Without Aid; Clinically Req'd."  Id. at 141.  But Dr. Shah also noted that Plaintiff's cane was "non-prescribed."  Id. at 142.  Moreover, Dr. Shah wrote "PRN" next to his opinion, indicating that the use of the cane is only as needed, i.e., pro re nata.  Id. at 141.  This seriously undermines Plaintiff's suggestion that the cane was absolutely work preclusive.  Indeed, Dr. Shah noted that Plaintiff reported having used the cane since at least December 2008, id. at 135, but Plaintiff did not stop working until May 2009.[4]

Even Plaintiff's own testimony refutes the suggestion that the cane is an unqualified requirement.  Plaintiff testified that he uses the cane whenever he has to "walk any great distance."  Id. at 28.  Plaintiff did not testify that he uses the cane at all times, including when he stands without walking.  Moreover, Plaintiff stated that he does not have a handicap permit for his vehicle.  Id. at 35.  These facts suggest an intermittent use of his cane based on the activities he intends to perform; they undermine Plaintiff's suggestion that the cane requires a finding of disability.  Perhaps most tellingly, Plaintiff cites no authority — nor is the Court aware of any —

---

[3] Although unclear from the briefing, it appears that Plaintiff claims that his use of the cane should result in a disability finding.  If this is not the case, Plaintiff fails to explain why the use of the cane requires reversal or remand of the disability determination.  See Preston v. Comm'r of Soc. Sec., No. 12-11413, 2013 WL 3944419, at *5 (E.D. Mich. July 31, 2013) (citing Kobetic v. Comm'r of Soc. Sec., 114 F. App'x 171, 173 (6th Cir. 2004) ("When remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." (internal quotation marks omitted))).

[4] Dr. Shah also concluded that Plaintiff "has moderate functional impairment of occupational activity because of lower back pain with moderate limitations of prolonged walking, standing, climbing stairs and ladders."  A.R. at 137 (emphasis added).  This further undermines Plaintiff's implied argument that, because of the need for his cane, the ALJ erred in finding that Plaintiff retained a residual functional capacity to perform some sedentary work.

11

suggesting that the use of a cane equates to an automatic disability determination; nor does Plaintiff explain how his use of the cane should affect the ALJ's residual functional capacity assessment.

Plaintiff nevertheless argues that the "ALJ erred in substituting his own medical conclusions for those of a treating physician as evidenced by the treating physician's subsequent diagnosis and treatment of the patient based on the same CT scans." Pl. Obj. at 4; see also Pl. Obj. at 3 ("It is submitted that Dr. Shah's opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and thus entitled to controlling weight."). The Court disagrees for two reasons.

First, Plaintiff's argument that the ALJ substituted his own medical judgment for that of a "treating physician" gives Dr. Shah's opinion too much weight. The record does not reflect that Dr. Shah was Plaintiff's treating physician; rather, he performed a consultative examination for purposes of determining disability. See 20 C.F.R. § 404.1527(c)(2); see also 20 C.F.R. § 404.1502 (defining "treating source" as claimant's "own physician, psychologist, or other acceptable medical source" that claimant sees "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)"). To the extent Plaintiff's argument thus hinges on the ALJ failing to give Dr. Shah's opinion the same high-bar of presumed "controlling weight" provided to treating physicians, this argument is legally untenable. See 20 C.F.R. § 404.1527(c)(2) (discussing controlling weight to be given to treating physicians); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-376 (6th Cir. 2013) (explaining the high standards for an ALJ reviewing treating physician opinions, and noting that "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight'").

12

Because Dr. Shah was a non-treating physician, the ALJ did not have to review the opinion for controlling weight. Rather, the ALJ implicitly considered whether Dr. Shah's opinion was consistent with the record as a whole — including summaries of Plaintiff's EMG, his MRIs, and other statements contained within Dr. Shah's report — and concluded it was not for purposes of the residual functional capacity assessment. This weighing of the evidence was proper, particularly in light of the apparent hedging in Dr. Shah's conclusory finding that the non-prescription cane was "clinically req'd," but only "PRN." See 20 C.F.R. § 404.1527(c)(3), (4) (in determining weight to provide non-treating physician opinion, ALJ considers whether the source provided supporting evidence and explanation, and whether the opinion is consistent with the record as a whole); see also Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 439 (6th Cir. 2010) ("An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding."); Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.").

Second, to the extent Plaintiff claims that the ALJ and Dr. Shah both relied on the same medical evidence in forming their conclusions, the Court notes that the summer 2011 MRI and EMG were performed months after Dr. Shah's consultative exam. A.R. at 143, 159. The physician reports from these tests formed the basis for the ALJ's conclusion that a cane was unnecessary, and Plaintiff failed to provide any medical opinion or documentary evidence dated after these tests reaching a contrary result.[5]

---

[5] Plaintiff argues that one of the findings in the 2011 MRI report — that the neural foramina were narrowed bilaterally— "can be a reason to need the use of a cane." Pl. Obj. at 3-4. Plaintiff provides no further evidence to support this view, nor does it appear that Plaintiff provided any such evidence to the ALJ. Accordingly, the Court declines Plaintiff's invitation to overturn the ALJ's decision based on his own beliefs regarding the MRI summaries.

13

Therefore, while the ALJ impliedly disregarded Dr. Shah's consultative opinion regarding use of a cane, he did so based on undisputed medical test reports that post-dated Dr. Shah's examination by over six months. And the ALJ did not improperly analyze the raw medical data of those test results, e.g., the MRI images; rather, he based his decision on the conclusions found in the test-result summaries prepared by physicians, Drs. Sehgal and Sul. Id. at 143, 159. See Dixon v. Comm'r of Soc. Sec., No. 12-404, 2013 WL 6001863, at *5 (S.D. Ohio Nov. 12, 2013) ("The ALJ explained that Plaintiff's lumbar x-rays were described as 'minimal' and 'mild' . . . . The ALJ was not interpreting raw data. Instead, the ALJ was summarizing the findings of the radiologists who interpreted the diagnostic reports."). Reviewing these non-treating physician reports, weighing them, and reaching a decision based on their findings are all recognized tasks for the ALJ to perform. See Hinton v. Comm'r of Soc. Sec., No. 09-1021, 2011 WL 446078, at *6 (W.D. Mich. Jan. 12, 2011) ("It is the ALJ's job to resolve conflicting medical evidence.") (Scoville, M.J.).

Finally, Plaintiff's argument that "there is no requirement in the social security regulations that the need of a cane, brace, crutches, etc. be corroborated by objective medical evidence," Pl. Obj. at 3, is without merit. This argument reads the ALJ's conclusion out of context. As explained, the ALJ found that

> [a]lthough the claimant used a cane at the consultative evaluation, in December 2010, there is no objective medical evidence corroborating the need for use of a cane. The claimant exhibits good strength in all the extremities and intact sensation and there is no evidence of weakness, radiculopathy, or neuropathy in the lower extremities.

A.R. at 16. The ALJ concluded that the record undermined Plaintiff's claim that he needed a cane, not that Plaintiff needed to provide specific medical evidence corroborating the need for one. This was a proper credibility determination based on the record before the ALJ.

14

Accordingly, Plaintiff's objection is overruled.

### B.  It Was Not Clear Error to Find That A Significant Number of Jobs Remain Even If Plaintiff Requires Use of a Cane on a Regular Basis.

Even if the Court was to conclude that the ALJ improperly substituted his own medical judgment for that of Dr. Shah's, an alternative ground exists for affirming the denial of benefits. The Magistrate Judge noted that even if the ALJ erred in rejecting Dr. Shah's opinion regarding the use of a cane, any such error was harmless. The Magistrate Judge highlighted that the vocational expert "testified, upon questioning by [Plaintiff's] attorney, that even if [Plaintiff] needed to use a cane, he still would be able to perform some visual inspecting/sorting jobs (approximately 6,000 in the state of Michigan)." R&R at 13 (Dkt. 13). While citing authority providing that even 1,000 jobs can be "significant," the Magistrate Judge concluded that 6,000 jobs "is a significant number . . . and provides substantial evidence supporting the ALJ's finding that [Plaintiff] is not disabled." Id. In other words, even if Plaintiff did need to use a cane at all times, the Magistrate Judge concluded that, based on the vocational expert's testimony, a significant number of jobs still exist, thereby precluding a finding of disability.

Plaintiff does not specifically object to this recommendation. There is significant authority indicating that the failure to raise a specific objection to an issue generally constitutes a waiver of the issue and no further review is required. See, e.g., August v. Caruso, No. 12-13775, 2013 WL 6816472, at *1 (E.D. Mich. Dec. 24, 2013) ("A party's failure to file objections to certain conclusions of the R&R waives any further right to appeal on those issues. . . . Likewise, the failure to object to certain conclusions in the magistrate judge'[s] report releases the Court from its duty to independently review those issues." (citing Smith v. Detroit Fed'n of Teachers Local 321, 829 F.2d 1370, 1373 (6th Cir. 1987) (failure to file objection to R&R "waived subsequent review of the matter" and district court was free to adopt the magistrate's

15

recommendation) and Thomas v. Arn, 474 U.S. 140, 149, 153 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings. . . . It seems clear that Congress would not have wanted district judges to devote time to reviewing magistrate's reports except to the extent such review is requested by the parties. . . .")); see also United States v. Sullivan, 431 F.3d 976, 984 (6th Cir. 2005) (failure to object waives appellate review unless error is so egregious that failure to permit review would result in a miscarriage of justice); Lardie v. Birkett, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002) ("As to the parts of the report and recommendation to which no party has objected, the Court need not conduct a review by any standard."). Therefore, Plaintiff's failure to clearly object to this independent ground for affirming the denial of benefits provides another ground for denying his motion for summary judgment.

Even if the issue is not waived, however, and the Court has some independent obligation to review the issue without any filed objection, the Court does not find any clear error on the face of the record that would bar accepting the Magistrate Judge's conclusion. See Fed. R. Civ. P. 72 Advisory Committee Note Subdivision (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

At the disability hearing, the following questioning occurred between Plaintiff's counsel and the vocational expert:

> Q: [A]ssuming the judge's hypothetical question where you responded with the various light and sedentary jobs. . . . But add to it the limitation that the claimant would be required to use a cane because he would fall without it and it would also be required to reduce pain. But the main point being he would be required to use

16

> a cane because he would fall without it. Would that affect those jobs?
>
> A: Well, certainly the light occupations where you can sit or stand or the sedentary occupations where you can sit or stand if in fact you need the cane when you're exercising the standing option. It's going to completely obliterate the light occupations because it's my experience in an eight hour day that persons have a difficult time wielding up to 20 pounds one-handed while they're holding onto a cane. <u>With the sedentary occupations, if we just look at that situation, now we're talking about possibly some visual inspection and sorting jobs</u>. . . . And inspecting and sorting, you can pick up a much lighter item with one hand and do that task. <u>So that would reduce them to 6,000 of those types of jobs in the state and one-half in the southeast Michigan area.</u>

A.R. at 45-46 (emphasis added).

The record thus reflects that even applying the ALJ's limitations plus the use of a cane, approximately 6,000 jobs still exist in Michigan, with approximately 3,000 in southeast Michigan. This constitutes a significant number of jobs, thereby precluding a finding of disability. <u>See, e.g.</u>, <u>Smith v. Astrue</u>, No. 10-1368, 2011 WL 4833120, at *14 (N.D. Ohio Oct. 12, 2011) (collecting numerous cases from the Sixth Circuit Court of Appeals holding that far below 3,000 jobs locally and 6,000 statewide constitute a significant number); <u>Cooper v. Colvin</u>, No. 12-101, 2013 WL 5350624, at *6-7 (E.D. Ky. Sept. 23, 2013) (failure to provide accurate hypothetical to vocational expert was harmless error where accurate hypothetical still revealed "thousands of jobs in the regional economy that Plaintiff can perform, and hundreds of thousands in the national economy"); <u>Ausborn v. Comm'r of Soc. Sec.</u>, No. 11-14731, 2013 WL 823225, at *7 (E.D. Mich. Jan. 4, 2013) (Whalen, M.J.) ("This Court is unaware of any case law stating that the current findings that 5,200 statewide jobs and 60,000, national, is not a 'significant number.'"); <u>see</u> <u>also</u> <u>Anderson v. Comm'r of Soc. Sec.</u>, 406 F. App'x 32, 34 (6th Cir. 2010) ("This court has held that fewer than 1000 regional jobs can be a significant number for purposes

of determining whether the claimant is disabled."). Therefore, the Magistrate Judge's conclusion of no disability based on job availability appears to be free of clear error.

### C. The Court Rejects Plaintiff's Final Argument as Vague and Irrelevant.

Plaintiff raises one final argument in his objection that does not appear to be tied directly to anything in the R&R:

> It should be noted that the vocational expert (VE) testified that the Plaintiff would be precluded from performing any type of work based upon his testimony regarding his pain level. The VE noted that the Plaintiff testified to having significant pain and discomfort stating: ". . . and that he does try to do some tasks around the house but the pain gets very intense. He has decreased concentration and he has to take breaks . . . and after 20 minutes of sitting that he does find it necessary to lie down. Recumbency also would not be tolerated on the job." (Tr. 42) The VE also confirmed that employers are letting people go when an employee exceeds one day per month being absent from work on a regular basis.

Pl. Obj. at 5.

The Court overrules this objection for two reasons. First, the objection is woefully deficient. Plaintiff fails to set forth a clear argument, explain where the Magistrate Judge erred, or specifically identify to which part of the R&R this objection relates. See Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986) (district courts need not provide de novo review where objections are frivolous, conclusive, or too general because the burden is on the parties to "pinpoint those portions of the magistrate's report that the district court must specifically consider"); see also T.S. v. Utica Cmmty. Schools, No. 11-13092, 2013 WL 5954425, at *1 (E.D. Mich. Nov. 7, 2013) ("An 'objection' that does nothing more than disagree with a magistrate judge's determination, 'without explaining the source of the error,' is not considered a valid objection.") (citing Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 509 (6th

18

Cir. 1991)). Accordingly, to the extent this argument relates to the R&R at all, the Court finds that it does not constitute a valid objection.

Second, even if it was a valid objection, any argument based on the vocational expert's opinion that no jobs would exist if Plaintiff's testimony was fully credited is fundamentally flawed. Such an argument ignores the ALJ's findings that "the claimant's statements concerning the intensity, persistence and limiting effect of [his] symptoms are not credible to the extent they are inconsistent with" the ALJ's residual functional capacity assessment. A.R. at 15. Indeed, the ALJ emphasized this point again later in the analysis: "The objective medical evidence does not fully corroborate the claimant's testimony regarding the extent of his limitations." Id. at 16. Therefore, the ALJ did not find Plaintiff's testimony credible to the extent it indicated an inability to perform any work. Instead, the ALJ found that Plaintiff could perform sedentary work with some additional restrictions, and then relied on the vocational expert's opinions that were consistent with this conclusion in determining whether a significant number of possible jobs existed. Plaintiff's selective choosing of the portions of the vocational expert's testimony that relied on Plaintiff's discredited statements is thus irrelevant.

## IV. CONCLUSION

For the foregoing reasons, the Court accepts the Magistrate Judge's R&R (Dkt. 13), overrules Plaintiff's objections (Dkt. 14), denies Plaintiff's Motion for Summary Judgment (Dkt. 11), and grants Defendant's Motion for Summary Judgment (Dkt. 12).

SO ORDERED.

Dated: March 20, 2014                       s/Mark A. Goldsmith
    Flint, Michigan                       MARK A. GOLDSMITH
                                       United States District Judge

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 20, 2014.

                                                s/Deborah J. Goltz
                                                DEBORAH J. GOLTZ
                                                Case Manager